## H. CARLISLE, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY, Respondent.

### Kansas City Court of Appeals, January 5, 1903.

Common Carriers: RATES: NARROW AND STANDARD-GAUGE CARS: INSTRUCTION. Plaintiff with knowledge of an agreement existing between connecting carriers that three narrow-gauge cars of the one should be equivalent to two standard-gauge cars of the other in fixing the rates, shipped his stock over the narrow-gauge route to a point on the standard-gauge road. *Held,* on the evidence, that the rate thus calculated did not exceed the joint tariff rates of the carriers, and an instruction set out in the opinion is approved.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

*I. N. Watson* for appellant.

(1) The court erred in giving instruction number eleven on behalf of defendant. (2) The fact that the shipper had knowledge of such unlawful or unreasonable charges or rules does not estop him from maintaining an action for money had and received for such unlawful or unreasonable charges or regulations. Heiserman v. Railroad, 63 Iowa 732, and cases cited; Carrier v. Railroad, 79 Iowa 87. (3) This instruction entirely ignores the issues made in this case. (4) Where an excessive charge is made by a common carrier, which is forbidden by statute, the person paying same has a right of action to recover back the excess so paid, and to do so it is not necessary that the payment be made under protest. Heiserman v. Railroad, 63 Iowa 732.

*Elijah Robinson* for respondent.

(1) The freight on all of the shipments in controversy in this case was paid voluntarily and without

any protest, and can not be recovered from the defendant. Savings Assn. v. Kehlor, 7 Mo. App. 165; Wolfe v. Marshall, 52 Mo. 167; Buchanan v. Sahlein, 9 Mo. App. 552; Regan v. Baldwin, 126 Mass. 485; Bailey v. Paulina, 69 Iowa 463; Waubunsee County v. Walker, 8 Kan. 431; Town of Ligonier v. Ackerman, 46 Ind. 322; White v. United States, 11 Court of Claims 578; Meek v. McClure, 49 Cala. 624. (2) An action for a violation of the interstate commerce law can not be maintained in this court. Van Patten v. Railroad, 74 Fed. Rep. 981. (3) In no event ought plaintiff to maintain his action against this defendant. Good faith and fair dealing required at least that much at the hands of plaintiff.

SMITH, P. J.—The appeal in this case was improvidently granted to the Supreme Court from where it was transferred here by an order of that court.

The petition is in seven counts, in each of which it is alleged in effect that the defendant had made a certain specified charge which plaintiff had been compelled to pay for the carriage of certain cattle shipped by plaintiff from Chama, New Mexico, to a certain Missouri river point over the Denver & Rio Grande railway and that of the defendant, a connecting line, in excess of the joint or through tariff rates then in force on said railway lines. The action was brought to recover the excess charge so made and collected on each of said alleged shipments.

The answer was a general denial. There was a trial and judgment for defendant and plaintiff appealed.

The only assignment of error which we may notice is that relating to the giving of the defendant's eleventh instruction which is as follows: "If the standard-gauge cars were not and could not be used on the Denver & Rio Grande Railway Company at the time of the shipment made by the plaintiff from Chama on said railway, said company charged all other shippers under like conditions at the rate of three narrow-gauge cars to two standard-gauge cars, and if the plaintiff was notified

of that fact and the correspondence read in evidence took place between him and the general freight agent, Wells, of the said Denver & Rio Grande Railway Company, then the plaintiff is not entitled to recover anything from this defendant on account of said rate of 'three to two' charged by said Denver & Rio Grande Railway Company."

It appears from the evidence that the line of the Denver & Rio Grande railroad extends from Chama, in the Territory of New Mexico, to Pueblo, in the State of Colorado, at which last-named point it connects with the defendant's line of railway. At the time the plaintiff made his several shipments there was a joint tariff or traffic agreement in force between said connecting railway lines by which cattle in straight carloads could be shipped from a station of the defendant's railway in Kansas, Nebraska and Colorado to pastures located on the lines of defendant railway in Kansas which were intermediate between the shipping point and the market, or located on the defendant's railway not exceeding sixty miles out of the direct line from point of shipping to Kansas City on the following basis: "Ascertain the through rate from originating point to Kansas City, Missouri, and from it subtract the tariff rate from feeding point to Kansas City, to the difference add $10 per car. The rate so obtained will be the rate to be charged from point of origin to the feeding point." It further appears that the car on which the above rate was given was what is known as "a standard car," which was either thirty or thirty-six feet in length. The charges so provided in the rate sheets on the thirty-six-foot car were proportionally greater than on that which was thirty feet in length.

The Denver & Rio Grande railroad was a narrow-gauge railway, the carrying capacity of whose cattle cars was less than one-half of that of the standard-gauge cars. In view of this, that railway had printed and in force at the time of the plaintiff's several shipments, a rule which provided that on the joint tariff rate "on cattle carloads per standard length broad-gauge cars"

there would be an allowance of "three narrow-gauge cars for each two broad-gauge cars loaded out of Pueblo."

The plaintiff was advised of this "restriction" long before he made his shipments, for it appears that he wrote to the general freight agent of the Denver & Rio Grande railroad complaining of the restriction and requesting its recession, but that officer replied that his company had always assessed its "charges on a basis of three narrow-gauged cars to two broad-gauged cars of standard length, and that to comply with his—plaintiff's—request would operate as a discrimination against other shippers," etc. The plaintiff thereupon acquiesced in the enforcement of the rule and thereafter made his shipments.

When the plaintiff's cattle were shipped from Chama on the Denver & Rio Grande railroad the charges were made on a basis of three of its narrow-gauge cars to two broad-gauge cars of standard length. When they arrived at Pueblo they were received by defendant and the charges made on that basis were paid by it. As the Denver & Rio Grande railroad had not and could not haul any broad-gauge cars of standard length, it was necessary, in order to make it practicable to carry into effect the through tariff rates on standard cars from points on its line to others on the connecting line of the defendant that some such rule as that of the "three to two" be adopted and put in force. From all the testimony it seems that the requirement of this rule was neither unreasonable nor unjust to the shipper, for the carrying capacity of the three narrow-gauge cars was equal to that of two broad-gauge cars of standard length. The plaintiff shipped his cattle with the distinct understanding that the charges would be governed by this rule. We do not see that the plaintiff would have been in any better situation or that the charges would have been less had the Denver & Rio Grande railroad been a broad-gauge railway and had furnished the plaintiff for the shipment of his cattle broad-gauge cars, standard length. The application of the through tariff rates,

to which we have referred, to the shipments, had they been so made, would not have worked out a result different from that of which plaintiff complains.

If the plaintiff, as we may infer was the fact, in loading his cattle in the cars of the Denver & Rio Grande railroad put a less number therein than he might, with reasonable safety, so that when the shipment was received by the defendant it found that it could safely place such cattle and haul them to the point of destination in a less number of standard cars than it had been obliged to receipt for, this circumstance manifestly argues nothing against the reasonableness of the "three to two" rule, nor does it afford any ground of recovery by plaintiff. The defendant received each of the plaintiff's shipments over the Denver & Rio Grande railroad on the "three to two" basis, and under its joint traffic arrangement with the latter railway company, doubtless, it was as much bound to carry them to the point of destination as if it had directly contracted to carry them from the initial point of shipment to that of destination for the joint tariff rate, and this without reference to the number of its own cars that was reasonably necessary to employ in completing the carriage.

Accordingly, it seems to us that the defendant's instruction was a proper declaration of the law applicable to the facts disclosed by the evidence. The other issues in the case were submitted by instructions unexceptionable in enunciation, and the finding, therefore, concludes all inquiry in respect to them.

The judgment will be affirmed. All concur.